## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION

| | | |
|---|---|---|
| **TONY JONES** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **4:22-cv-00359-O** |
| | § | |
| **CITY OF FORT WORTH, EULISES** | § | |
| **GONZALEZ, and GILBERTO GONZALEZ,** | § | |
| *Defendants.* | § | |

## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

COMES NOW, Plaintiff Tony Jones ("Jones") seeking relief from Defendants, the City of Fort Worth, Eulises Gonzalez, and Gilberto Gonzalez and shows the Court the following:

SUMMARIZING: Plaintiff lives next door to Defendants Eulises Gonzalez and Gilberto Gonzalez ("Gonzalez Defendants"), who have shot at Plaintiff's home. Following Plaintiff's complaints about the Gonzalez Defendants, they have filed multiple code compliance complaints against Plaintiff, which the City has adopted and used as pretext to invade Plaintiff's home with invalid search warrants.

In response to the defendants' unwarranted attention from the City, Plaintiff has brought this suit against the Gonzalez Defendants for trespass and claims for deprivation of his constitutionally protected rights against the City of Fort Worth, including due process and equal protection, and related other claims.

The Court has entered a default against the Gonzalez Defendants after they failed to appear in this matter, and this Amended Complaint brings no new claims against them.

Plaintiff is filing this Amended Complaint in response to City of Fort Worth's Motion to Dismiss and to reformat this complaint after its removal from state court.

An appendix of exhibits is filed concurrently and incorporated by reference.

## I.  PARTIES AND SERVICE

1.      Plaintiff **Tony Jones** resides in Texas and may be contacted through his attorneys of record at Norred Law, PLLC.

2.      Defendant **City of Fort Worth** (the "City") is a home-rule municipality in Tarrant County in the State of Texas. The City may be served with process through city attorney Chris Austria at 200 Texas St., Fort Worth, Texas 76102.

3.      Defendant **Eulises Gonzalez** ("Eulises") resides in Texas and may be served at 4312 Ave H., Fort Worth, Texas 76105, or wherever he may be found.

4.      Defendant **Gilberto Gonzalez** ("Gilberto") resides in Texas and may be served at 4312 Ave H., Fort Worth, Texas 76105, or wherever he may be found.

## II.  JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983, which provides redress to persons deprived of civil rights under color of state law. These provisions confer jurisdiction on this Court to adjudicate violations of federal civil rights acts and applicable provisions of the United States Constitution. This action was removed by Defendants pursuant to 28 U.S.C. 1441(a) [See Doc. 1].

6.      This Court has supplemental jurisdiction over Plaintiff's state-related claims pursuant to 28 U.S.C. § 1367, as the allegations concerning the state claims are part of the same controversy as those supporting Plaintiff's federal claims.

7.      This Court has personal jurisdiction over the defendants, which comprise a city and two individuals who reside in the city, all of which reside in the Northern District of Texas, Fort Worth Division, where the events leading to this suit have all occurred.

### III.  FACTS

8.    Plaintiff Tony Jones is the owner of real property described as 4320 Ave H., College Heights Addition-FW, Lot 3 Block 4 ("Property"), shown below:





9.    Plaintiff's property is completely enclosed. Plaintiff has a 6-ft solid fence in the backyard preventing anyone from seeing inside of the yard without a ladder or flying surveillance equipment. Plaintiff's front yard features a "NO TRESPASSING" sign with a locked gate enclosing the property. The above images shows that Plaintiff's backyard is not publicly viewable. Plaintiff made steps to ensure his privacy was maintained in his backyard from observation by

curious neighbors. He also secured his front yard from physical entry by the public. No member of the public could enter or see into the backyard or enter the driveway.

10.    Defendants Eulises Gonzalez and Gilberto Gonzalez (corporately, "Gonzalez Defendants") are Jones's neighbors, and reside next door to Jones, at 4312 Ave H., Fort Worth, TX 76105.

11.    For several years, the Gonzalez Defendants have engaged in a pattern of harassment targeting Jones, in many cases employing the City's Code Enforcement agents, who have willingly gone along as a partner in the harassment.

12.    This harassment has included the Gonzalez Defendants committing civil and criminal offenses against Jones, such as physically entering the Property without his permission and discharging firearms onto Jones's property which caused damage to Jones's vehicles.

13.    These actions led to Jones filing a criminal complaint which resulted in prosecution of Eulises in the Fort Worth Municipal Court. The police incident report, court receipt, and order to dismiss are attached as Exhibit 3.

14.    During the course of municipal court proceedings, Eulises claimed that it was his father Gilberto who committed trespass against Jones, and not Eulises. This defense led to the dismissal of the municipal court case.

15.    In addition to the trespass offenses, the Gonzalez Defendants embarked on a campaign of unsubstantiated code violation reports against Jones's Property.

16.    These reports to the Fort Worth Code Compliance Department ("Code Compliance") resulted in the investigation of Jones's Property and the subsequent issuance of multiple Notices of Violation, and most recently, a General Complaint Citation.

17.    In the notice of violation dated March 11, 2021, Code Compliance wrongfully claims that Jones violated Chapter 22, Article IX, Division 2, Section 22-1 and 22-303-315 as well as

Appendix B, Article II, Division 3, Subdivision A, Section 11A-26 of the Fort Worth City Code due to the alleged storage of trash and junk motor vehicles in his back yard. With regard to the provision concerning trash on Jones's property, no such discarded items existed on the property at the time of the alleged violation. The notice of violation instructs Jones to "remove water heater appliances" stored in his yard, but the only water heater appliance to which the notice could be referring was temporarily placed in the back of a truck on Jones's property and is currently stored in an enclosed shed. The notice is attached as Exhibit 4.

18.    The notice of violation from Code Officer Mario Nevarez dated March 31, 2021, claimed that "[Nevarez] observed approximately 25 vehicles parked in the back yard." Yet at no time had Jones stored 25 vehicles in his backyard, and the vehicles which he does store in his backyard are contained by a privacy fence enclosing the property on all sides, rendering the contents of the backyard invisible from the street and neighboring properties in accordance with Fort Worth City Code Article IX, Division 2, Section 22-1. The notice is attached as Exhibit 4.

19.    To issue their most recent notices dated August 4, 2021, Code Compliance agents unlawfully intruded upon Jones's property after securing an unlawful administrative search warrant without probable cause, and cutting the lock on Jones's driveway gate to gain access to two working, registered vehicles that were parked there. Code Officers B. Wedell and Bell then attached to the vehicles two notices of violation dated August 4, 2021. These notices claim the vehicles are "Junked" based on Section 22-1, yet both vehicles to which the notices were attached were registered and fully operational, and the officers had no basis to claim that they were not.

20.    The administrative warrant affidavit for this date was sworn "Such belief is based on inspection of property made by Affiant within the last twenty-[f]our (24) hours." The Activity

Record states there was only in-office activity the 24 hours before the warrant. Exhibit 2. The warrant and affidavit are attached as Exhibit 1.

### Tuesday, 08/03/2021

| | | |
|---|---|---|
| (Case Note) | Dispatch to re-inspect on Aug 3 2021 1:10PM | Shaun Weathersby |
| (Case Note) | Arrived to re-inspect on Aug 3 2021 1:10PM | Shaun Weathersby |
| (Case Note) | In office activity. Prepared JV verification warrant and outside storage warrant for judges review. I may be | Shaun Weathersby |
| | able to obtain the outside storage warrant. The notice that was issued does not has the correct legal description attached. | |

21.    The entry also states "The notice that was issued does not has the correct legal description attached," indicating recognized doubt about the legality of what the City was requesting.

22.    Jones next received a notice of violation on August 4, 2021, once again claiming violations 11A-26 due to discarded or broken items on the property. But as previously stated, the water heater to which Code Compliance previously referred is stored in an enclosed shed and not visible on August 4, 2021.

23.    On September 22, 2021, Code Compliance agents conducted another unlawful administrative search of Jones's Property. This search resulted in the issuance of a General Complaint Citation for "[a]llowing accumulation of wood, tires, auto parts, lawn equipment, and other items on property providing harborage for rodents and other vectors."

24.    This new violation related to rodent harborage was not previously alleged by Code Compliance and appeared to be little more than confirmation of Code Compliance's continual attempts to move the goalposts and find Jones in violation of *some* code provision.

25.    The administrative warrant affidavit for this date was sworn "Such belief is based on inspection of property made by Affiant within the last twenty-[f]our (24) hours." The Activity Record states there was only in office activity the 24 hours before the warrant, further all happening within one minute. Exhibit 2. The warrant and affidavit are attached as Exhibit 1.

**Tuesday, 09/21/2021**

| | | |
|---|---|---|
| (Case Note) | Dispatch to re-inspect on Sep 21 2021 10:05AM | Shaun Weathersby |
| (Case Note) | Arrived to re-inspect on Sep 21 2021 10:05AM | Shaun Weathersby |
| (Case Note) | In office activity. Prepared warrant for judges review. | Shaun Weathersby |
| (Case Note) | Completed re-inspection on Sep 21 2021 10:06AM | Shaun Weathersby |

26.    Code Compliance's continual efforts to find our client in violation of the Fort Worth City Code despite no substantiating evidence of such violation amounts to the City's complicity with the Gonzalez Defendants to harass Jones.

27.    Meanwhile, Open Records Requests previously filed and to which the City responded indicates that other properties in Plaintiff's neighborhood known by Plaintiff to have similar property conditions have received no known attention or prosecutorial action by Code Compliance as of January 6, 2020. These properties include 4253 Ave. G, 4200 Ave. H, 4312 Ave H, 4145 Ave J, 4201 Ave J, 4301 Ave J, 3632 Ave M, and 4133 Ave N.

28.    While the City has targeted Jones based on the false reports by the Gonzalez Defendants, other nearby properties exhibit the trash-ridden characteristics of which the Property is accused, though the City appear to be comfortable in allowing such conditions to continue unabated.

29.    Tony Jones has paid an unknown number of citations based on these ongoing actions.

## IV.   APPLICABLE LEGAL AUTHORITIES

### A.  42 USC § 1983 claims for deprivation of constitutional rights and waiver of immunity.

30.    One of purposes underlying Civil Rights Act (42 USCS § 1983), giving federal right of action for deprivation of any right, privilege, or immunity secured by Federal Constitution, is to provide remedy in federal courts supplementary to any remedy any state might have, and relief under Act may not be defeated because of failure to exhaust administrative remedies provided under state law. *Damico v. California*, 88 S. Ct. 526 (1967).

31.    To obtain relief under 42 USC § 1983, plaintiffs must establish that (1) they were deprived of rights secured by Constitution or laws of United States; and (2) the deprivation was committed under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 119 S. Ct. 977 (1999).

32.    42 USC § 1983 allows suits against municipal employees who exceed their legal authority and infringe established constitutional rights, waiving sovereign and governmental immunity, and against their employing cities under a respondeat superior theory where the governing council effectively ratifies an employee's actions. *Myers v. City of Highland Vill.*, 269 F. Supp. 2d 850, 2003 U.S. Dist. LEXIS 11515 (E.D. Tex. 2003).

33.    If entries occur which appear to violate the Constitution, the entries must be reviewed on a case-by-case basis since the ordinance is not invalid on its face." *Fields v. City of Sherman*, Texas, No. 4:18-CV-821, 2020 WL 2478544, at *12 (E.D. Tex. Jan. 20, 2020), report and recommendation adopted, No. 4:18-CV-821, 2020 WL 1226969 (E.D. Tex. Mar. 13, 2020). Plaintiff must allege facts showing a policymaker had actual or constructive knowledge that the ordinance would cause the alleged constitutional violations. *Id.*

## V.   CAUSE – DEFAMATION

### A.  Legal Standard

34.    Defamation is defined as the invasion of a person's interest in their reputation and good name. *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). See also Texas Civil Practice and Remedies Code §73.001. The elements of defamation include: (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) with the requisite degree of fault, and; (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). The requisite degree of fault for defaming private figures is negligence. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 570 (Tex. 1998).

35.     The communication of alleged wrongful acts to an official – authorized to protect the public from such acts – is a qualified privilege and are given some protection for civil prosecution for defamation; however, such statements must be made in good faith and without actual malice. *See Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App. 1977). *See also Clark v. Jenkins*, 248 S.W.3d 418, 428-30 (Tex. App. 2008). The Texas Supreme Court has taught "Such privilege is termed conditional or qualified because a person availing himself of it must use it in a lawful manner and for a lawful purpose. The effect of the privilege is to justify the communication when it is made without actual malice." *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 899 (Tex. 1970) (citations omitted).

36.     To overcome the privilege, the plaintiff must show that the harasser made the communication with actual malice, *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 899 (Tex. 1970); *Ramos v. Henry C. Beck Co*., 711 S.W.2d 331, 335 (Tex. App.—Dallas 1986, no writ) (plaintiff bears the burden of proving malice). defined as "knowledge that it was false or with reckless disregard" that a "false defamatory statement was made with a high degree of awareness of [its] probable falsity." *Foster v. Upchurch*, 624 S.W.2d 564, 566 (Tex. 1981).

37.     A plaintiff bringing a defamation claim against a code harasser, therefore, must show the harasser made his reports with malice. In an ongoing series of actions, the aggregated behavior rather than the individual complaints is the issue; it is the cumulation of all the complaints together rather than the details of each complaint, i.e., the preponderance of the evidence, that makes the conduct defamatory. *See In re Lipsky*, 411 S.W.3d 530 at 539; *Cunningham v. Waymire*, 612 S.W.3d 47, 67, 71 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

38.     "[T]here are three types of damages that may be at issue in defamation per se proceedings: (1) nominal damages; (2) actual or compensatory damages; and (3) exemplary damages. Plaintiffs

can seek general damages that includes damages for loss of reputation and mental anguish." *Miranda v. Byles,* 390 S.W.3d 543, 555–556 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

### B. Application

39.    Upon information and belief, the Gonzalez Defendants have made repeated calls to Fort Worth Code Compliance alleging that Plaintiff is including that he is wrongfully storing vehicles in his back yard.

40.    Plaintiff contends that an opportunity for discovery will show that the Gonzalez defendants, willfully, and intentionally, mislead FW Code Compliance by making false statements with the aim of inciting an investigation into Mr. Jones.

41.    Discovery will reveal that the false reports indicate that Mr. Jones was violating the city code and thus were defamatory *per se,* because they countenanced a violation of the law.

42.    Plaintiff will show that he has materially suffered damages to the defamation including legal fees incurred demonstrating his innocence.

43.    Plaintiff further avers that the investigation exception to defamation does not apply in these facts because the false statements were made knowingly not to prompt a genuine investigation.

44.    This claim is timely because Plaintiff sent a demand for correction, clarification, or retraction pursuant to the Texas' Defamation Mitigation Act, Tex. Civ. Prac. & Rem. Code §§ 73.051-73.062. was sent to Gonzalez Defendants on March 18th, 2022, via certified mail.

45.    As of April 19, 2020, Plaintiffs have neither responded nor issued the requested retractions.

### VI.   CAUSE – DEPRIVATION OF DUE PROCESS (42 USC § 1983)

### A.  Legal Standard

46.    Procedural due process provides that government actors may not make decisions that deprive individuals of life, liberty, or property without due process of law mandated by the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 322 (1976).

47.    To prove a claim for violation of due process under § 1983, a plaintiff must identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

## B. Application

48.    The above facts and laws are incorporated by reference in all claims. Plaintiffs' federal claims are brought pursuant to 42 U.S.C.§ 1983 and the Due Process Clause of the Fifth and Fourteenth Amendments.

Here, the City of Fort Worth, through its Code Compliance department, deprived Jones of his interest in his real and personal property when it conducted two unlawful administrative searches on his property without probable cause by relying on sworn materially false statements in the affidavit supporting their administrative warrants and Defendant Gonzalas's personal animus. The City used personal animus to gather false reports to use for a warrant, and further their customary boilerplate affidavit form for administrative warrants contained materially false sworn language that the code compliance officer swore to. The language states that the officer personally inspected the property twenty-four hours before the warrant is issued. The warrants in this case included materially false sworn statements of the City's officers that they personally inspected the Property but they did not. Both the August 4th and September 22nd supporting affidavits are inconsistent with Fort Worth's Case number: 21-587279 (Activity History) which show affirmative proof that there was no inspection within 24 hours of each issued administrative warrant:

### Tuesday, 08/03/2021

| (Case Note) | Dispatch to re-inspect on Aug 3 2021 1:10PM | Shaun Weathersby |
|---|---|---|
| (Case Note) | Arrived to re-inspect on Aug 3 2021 ↑:10PM | Shaun Weathersby |
| (Case Note) | In office activity. Prepared JV verification warrant and outside storage warrant for judges review. I may not be | Shaun Weathersby |
| | able to obtain the outside storage warrant. The notice that was issued does not has the correct legal description attached. | |

### Tuesday, 09/21/2021

| (Case Note) | Dispatch to re-inspect on Sep 21 2021 10:05AM | Shaun Weathersby |
|---|---|---|
| (Case Note) | Arrived to re-inspect on Sep 21 2021 10:05AM | Shaun Weathersby |
| (Case Note) | In office activity. Prepared warrant for judges review. | Shaun Weathersby |
| (Case Note) | Completed re-inspection on Sep 21 2021 10:06AM | Shaun Weathersby |

49.    Neither affidavit can be said to be based on a personal inspection of the property made by the Affiant within the last twenty-four hours of issuance of the warrant. Both activity report entries reflect "in office activity". Further, the August 21st entry suggests that the dispatch, arrival, warrant preparation, and completion of the re-inspection happened within 10:05AM to 10:06AM. No personal inspection was made within the 24-hour period for either warrant. Both warrants rely on materially false information and are invalid. *See* Exhibit 1.

50.    The City deprived Plaintiff of due process by allowing City policy of using the boilerplate language resulting in a magistrate relying on lies sworn by their officers. The City deprived Plaintiff of due process by showing a custom of cooperating with individuals with personal animus, resulting in warrants being issued relying on false information provided by personal animus and deprivation of Plaintiff's constitutional rights to be secure in his home and effects and due process of the law.

## VII.   CAUSE – VIOLATION OF EQUAL PROTECTION (42 USC § 1983)

### A.  Legal Standard

51.    A plaintiff may bring an equal protection claim as a "class of one" when he has been (1) intentionally treated differently from others similarly situated and (2) there was no rational basis

for the difference in treatment. *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012) (*citing Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

**B.  Application**

52.    The above facts and laws are incorporated by reference in all claims. Plaintiffs' federal claims are brought pursuant to 42 U.S.C.§ 1983 and the Equal Protection Clause of the Fourteenth Amendment.

53.    The City through its Code Compliance Department has continually treated Jones differently from other property owners similarly situated—whose property is in similar or worse condition than Jones's—when it has attempted time and time again to find him in violation of some code provision without cause. The City knew of the personal animus between the Gonzalas Defendants and the Plaintiff because of the criminal proceeding. The City entertained the animus by unequally citing Plaintiff in relation to properties right next to him that are clearly in worse violation. Further, the customary affidavit for administrative warrants resulted in code compliance recklessly swearing they have inspected the property twenty-four hours before the warrant was issued, which did not happen in either warrant in this case. The customary form created by Code Compliance policymakers further resulted in deprivation of Plaintiff's equal protection, due process, and 4th amendment rights. There has been no rational basis for the City's behavior, which borders on harassment.

### VIII.   CAUSE – UNLAWFUL SEARCH (42 USC § 1983)

**A.  Legal Standard**

54.    The Fourth Amendment of the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall be not violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

55.    The Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312 (1978). "If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." *Id.*

56.    In the present case the Supreme Court of Delaware held, as a matter of first impression for it, that a defendant under no circumstances may so challenge the veracity of a sworn statement used by police to procure a search warrant. We reverse, and we hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. *Franks v. Delaware*, 98 S. Ct. 2674, 2676 (1978)

57.    An individual can challenge a warrant in one of three ways: 1) Challenge that probable cause did not exist to issue the warrant; 2) challenge the information used to generate probable cause was illegally obtained by presenting certain facts in the affidavit were illegally obtained and should be disregarded and without the illegally obtained facts, the warrant is facially insufficient

because it fails to establish probable cause; 3) Challenge that the affiant gave false information to the magistrate, specifically showing a) oath or affirmation supporting the warrant contained a materially false statement; b) law enforcement knew of the false information or acted to reckless disregard for the truth; and "no challenge permitted if D alleged informant (not affiant) lied as informant's credibility is weighted when {C is initially considered; c) warrant would not have been issued had the false information been omitted. *Id. United States v. Beard*, No. 3:20-CR-0567-B, 2022 WL 1321549, at \*6 (N.D. Tex. May 3, 2022).

## B. Application

58.    The above facts and laws are incorporated by reference in all claims. Plaintiffs' federal claims are brought pursuant to 42 U.S.C.§ 1983 and the Fourth Amendment to the United States Constitution.

59.    The City, through its Code Compliance department, unlawfully and unreasonably relied on material false sworn statements of its agents in its customary affidavit form. Further, the City entertained personal animus of false reports in their initial investigations and notices from the Gonzalas Defendants. These policies resulted in a warrant that would not have been issued if the magistrate knew the whole truth. The City was unequally targeting Plaintiff due to false reports of Gonzalas Defendants, who the City knew had personal animus toward Plaintiff, and the City lied when the Agents swore that they personally inspected the property within twenty-four hours of issuing the administrative warrants. These customs resulted on the City intruding upon and searching Jones's Property in violation of his Fourth Amendment rights when executing its two invalid search warrants.

## IX.   CAUSE – TRESPASS TO REAL PROPERTY

### A.  Legal Standard

60.     Trespass to real property occurs when a person enters another's land without consent. *Rankin v. FPL Energy, LLC*, 266 S.W.3d 791, 797-98 (Tex.App.—Fort Worth 2006, pet. denied).

61.     To recover damages, a plaintiff must prove that: (1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff. *Rankin*, 266 S.W.3d at 509 n.4 (*citing Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex.App.—Fort Worth 2006, pet. denied)).

### B.  Application

62.     The Gonzalez Defendants committed trespass to Jones's real property when they physically intruded onto the Property without Jones's permission to damage Jones's personal effects and attempt to discover code violations on the Property. These actions caused injury to Jones in the form of property damage and enforcement action by Code Compliance.

63.     The City committed trespass to the Property by obtaining a search warrant by using an insufficient process depending on a false affidavit. Without a valid search warrant, the City's actions were mere trespass.

## X.   CAUSE – TRESPASS TO PERSONAL PROPERTY

### C.  Legal Standard

64.     "Trespass to personalty is an injury to, or interference with, possession of the property, unlawfully, with or without the exercise of physical force." *Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204, 210 (Tex. App.—Corpus Christi 2002, no pet.) (*citing Jamison v. Nat'l Loan Investors*, L.P., 4 S.W.3d 465, 469 n.2 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)). Destruction of, or injury to, personal property, regardless of negligence, may be a trespass. *Id.*

**D. Application**

65.     The above facts and laws are incorporated by reference in all claims.

66.     The Gonzalez Defendants committed to trespass to Jones's personal property when they discharged firearms onto his Property, causing damage to vehicles parked in Jones's backyard through physical force.

67.     The City committed trespass to Jones's personal property when its agents cut the locks to his front gate and rear gate.

## XI.   CAUSE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**A. Legal Standard**

68.     To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendants actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

69.     Whether conduct is extreme and outrageous for the purpose of intentional infliction of emotional distress is generally a question of law. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005).

**B. Application**

70.     The above facts and laws are incorporated by reference in all claims.

71.     The Gonzalez Defendants intentionally inflicted emotional distress upon Jones when they intentionally discharged firearms onto Jones's property with the intention to damage his vehicles and repeatedly reported false violations to Code Enforcement in an attempt to harass Jones.  This conduct was extreme and outrageous and caused Jones severe emotional distress.

## XII.  APPLICATION FOR INJUNCTIVE RELIEF

### A.  Legal Standard

72.      To obtain a temporary injunction, the applicant must plead a cause of action against the defendant and show both a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim. *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 657 (Tex.App.—Houston [14th Dist.] 2010, no pet.) (*citing Butnaru*, 84 S.W.3d at 204).

73.      To show a probable right of recovery, the applicant must plead and present evidence to sustain the pleaded cause of action. *Id.*

74.      An injury is irreparable when the injured party cannot be adequately compensated in damages or if damages cannot be measured by any certain pecuniary standard. *Id.*

### B.  Application

75.      The above facts and laws are incorporated by reference in all claims.

76.      Plaintiff asks that this Court enjoin the City from further searches of Jones's Property by the City's agents without a valid search warrant based on a valid affidavit that is not false on its face, using an affidavit that is more than boilerplate language that includes false statements.

77.      If Jones is not granted this injunctive relief, he will suffer irreparable injury as a result of continual harassment and violation of his constitutional rights which cannot be redressed through an award of monetary damages.

## XIII.  WAIVER OF IMMUNITY

78.      Defendants have waived governmental immunity from the claims in this complaint by infringing upon Plaintiff's constitutional rights.

79.      Municipalities cannot make use of the qualified immunity defense. They can be held liable even if they did not know they were violating the victim's constitutional rights. *Owen v. City of Independence*, 445 U.S. 622 (1980).

80.    A plaintiff may establish municipal liability under section 1983 by proving a violation of constitutional rights by an action pursuant to official municipal policy or pursuant to misconduct so pervasive among non-policy-making employees of the municipality as to constitute a custom or usage with the force of law. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

## XIV.  PRAYER

WHEREFORE PREMISES CONSIDERED Plaintiff Tony Jones respectfully prays that the Defendants be cited to appear and answer, and that Jones have judgment as he may be justly entitled in law and equity, including court costs and the following:

a.  Actual damages of $1,000.00 resulting from the Gonzalez Defendants' trespass;

b.  Actual damages of $476.00 resulting from the issuance and payment of the General Complaint Citation;

c.  Damages not less than $250,000 resulting from the Gonzales Defendants' infliction of emotion distress upon Plaintiff;

d.  Economic damages and attorney fees in connection with the constitutional deprivations by the City of Fort Worth, and trespass on Plaintiff's property.

e.  Injunctive relief as described above;

f.  Prejudgment and post judgment interest; and

Respectfully Submitted,

Norred Law, PLLC
/s/ Warren V. Norred
Warren V. Norred, TBN. 24045094
warren@norredlaw.com
515 E. Border; Arlington, Texas 76010
P. 817-704-3984 F. 817-524-6686
Attorney for Tony Jones

**Certificate of Service** – I certify that I served this response to the City of Fort Worth by the Court's eservice system on September 28, 2022. - /s/Warren V. Norred